Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
CIARDI CIARDI & ASTIN
One Commerce Square, Suite 1930
2005 Market Street
Philadelphia, PA  19103
(215) 557-3550
Proposed Attorneys for the Debtor
aciardi@ciardilaw.com
jcranston@ciardilaw.com

## UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| FRAZER/EXTON DEVELOPMENT, LP | : |
| | : |
| | : BANKRUPTCY NO. 11-14041 |
| DEBTOR | : |
| IN RE: | : |
| | : CHAPTER 11 |
| WHITELAND VILLAGE, LTD. | : |
| | : |
| | : BANKRUPTCY NO. 11-14036 |
| DEBTOR | : |

**MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 363 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9013 (I) APPROVING FORM, MANNER AND NOTICE OF BIDDING PROCEDURES, (II) AUTHORIZING THE SALE OF REAL ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBERANCES, (III) ASSUMING AND ASSIGNING VARIOUS CONTRACTS AND (IV) GRANTING RELATED RELIEF**

Frazer/Exton Development, LP ( "FED Debtor"), and Whiteland Village, Ltd., ("WV Debtor") by and through their undersigned counsel, Ciardi Ciardi & Astin, hereby submit this motion for the entry of an order (I) approving the form, manner and notice of bidding procedures, (II) authorizing the sale of real estate, described herein, free and clear of liens, claims and encumbrances, and (III) assuming and assigning various contracts (IV) granting related relief

(the "Motion"), and, in support thereof, respectfully aver as follows:

## JURISDICTION

1. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9013.

## BACKGROUND

2. On May 18, 2011 (the "Filing Date"), the FED Debtor and the WV Debtor filed voluntary petitions for reorganization pursuant to chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"). The FED Debtor and WV Debtor are collectively referred to as Debtors.

3. Since the Filing Date, the Debtors have remained in possession of their assets and continued management of that business as a debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. An official committee of unsecured creditors (the "Committee") has not yet been appointed.

5. The FED Debtor is the owner of all that tract or parcel of land, including any buildings and other improvements located thereon, consisting of approximately 100 acres, more or less, located at 15 South Bacton Hill Road, Malvern, East and West Whiteland Townships, Chester County, Pennsylvania (the "Property").

6. The WV Debtor has obtained various approvals and permits which would permit it to develop all and/or portions of the Property as a continued care retirement community.

7. Prior to the filing date, it was the Debtor's intention to develop the Property as a retirement community and the Debtors thus commenced marketing efforts for the pre-sale of units.

8. The Debtors' Property is more fully described on the site Plan attached hereto as (Exhibit "A".)

9. The Property was designated a Superfund site by the EPA as a result of activities occurring on the Property prior to the Debtors' ownership.

10. The FED Debtor, with the supervision of the EPA, undertook and completed the remediation of the site.

11. The FED Debtor and/or WV Debtor are currently indebted to the following creditors who have liens on the Property.

    a) Sovereign Bank – $32,244,671.00 Million plus accrued interest – mortgage

    b) Paul Risk Associates - $1,992,627.00 – mechanics lien

    c) Andrews Excavation - $951,971.49 – mechanics lien

    d) EPA - $1,164,815.00 – lien

    e) ECOR Solutions, Inc. - $1,703,355.00 – mechanics lien

12. Through the Debtors' efforts, the Debtors secured an agreement of sale (the "Agreement") for the sale of a portion of the Property (the "Project") to the Buyer for $7,300,000 in cash and the assumption of up to $5,000,000 of debt (the "Initial Purchase Price"). In addition, there is further consideration based upon the sale of additional units by the Buyer (the "Additional Purchase Price"). The Initial Purchase Price and the Additional Purchase Price is hereinafter referred to as the "Consideration." A true and correct copy of the Agreement is attached hereto and incorporated herein as (Exhibit "B".)

13. The Agreement calls for the sale of a portion of the Premises to Makemie at Whiteland, a Pennsylvania nonprofit corporation and an Affiliate of Philadelphia Presbytery Homes, Inc. ("Makemie" or "Buyer") for the Consideration. Makemie is unrelated to the Debtors, although as disclosed in the Agreement, an entity related to the Debtor is entering into a Developer Agreement with Makemie pursuant to which Roskamp Management Company, LLC (a Delaware Limited Liability Company, ["Roskamp"]) shall provide certain construction services for the project and guarantee that the construction cost to Makemie under the Construction Contract shall not exceed a total amount of $82,830,510.00. Roskamp may receive a potential $2,000,000.00 fee for services provided under the Developer Agreement.

14. The Agreement calls for cash consideration of $7,300,000 and the assumption and payment by buyer at closing of up to $5,000,000.00 in payables owed by sellers or Roskamp.

15. The Debtors propose a distribution of the sale proceeds as set forth on the Budget attached hereto as Exhibit "C."

16. The Debtors intend to file a Plan which incorporates the Sale, the development of the remaining premises and ultimate payment to creditors. This will permit the development of Makamie in the most expeditious fashion.

17. The Debtors believe and aver that with the partial sale as set forth in the Agreement, the value of the remaining parcels and the ultimate development of said parcels, the Plan will provide for a substantial payment to all creditors.

18. The sale of the Property requires approval of the recordation of subdivision and land condominium plans in order to effectuate the transfer of the thirty (30) acres to Buyer.

19. The debts being assumed by Buyer are critical to the Buyer's development plans for the project.

20. The Debtors prepared an analysis, attached hereto as Exhibit "C," demonstrating the manner in which Sovereign will be paid from the sales of real estate and other assets at the Property.

## BIDDING PROCEDURES

21. The Debtors also seeks to sell the Property subject to higher and better offers.

22. Accordingly, the Debtors request authority to continue to market the Property until the date of any hearing on this Motion in order to entertain higher and better offers.

23. Any party who complies with the bidding procedure wishing to submit a higher or better offer on the Property may do so at the time of the hearing on the Motion.

24. As of the date of the filing of this Motion, The Debtors are unaware of other potential bidders for the Property, and, therefore, will entertain all bids.

## THE BASIS FOR RELIEF AND THE REASONS THEREFOR

25. By this Motion, the Debtors seek the entry of two orders by the Court:

   a) an order to be entered outlining the procedure for entertaining higher and better offers at the Sale Hearing (the "Bidding Procedures Order"); and

   b) an order to be entered at the Sale Hearing pursuant to section 363 of the Bankruptcy Code approving the sale of the Property free and clear of liens, claims, encumbrances and interests (the "Sale Approval Order").

26. Each of these orders and the reasons and authority for entry thereof are discussed below.

## **THE BIDDING PROCEDURES ORDER**

27. The Debtors seek entry of an order approving bidding procedures for the Sale Hearing to encourage only serious offers for the Property and promote a productive and business-like Sale Hearing.

28. The proposed bidding procedures provide that, in order to be considered higher and better than the offer of Buyer ("Pending Offer") pursuant to the Agreement, competing bids made at the Sale Hearing must satisfy all of the following criteria (any such bid hereinafter referred to as a "Qualified Bid"):

   a. only Buyer and a party who has submitted a Qualified Bid may bid at the Sale Hearing;

   b. a Qualified Bid must meet the following conditions:

   (i) Any party desiring to make a bid for the Property shall submit a bid <u>in writing by 5:00 p.m. on June   , 2011</u> to counsel for the (i) Debtors, Ciardi, Ciardi & Astin, 2005 Market Street, Suite 1930, Philadelphia, PA 19103 Attn: Albert A. Ciardi, III, Esquire and Jennifer E. Cranston, Esquire, with a copy to (ii) Office of the United States Trustee, 833 Chestnut Street, Ste. 500, Philadelphia, PA  19103. The bidder shall have the obligation to confirm its bid status. The minimum bid will be $12,800,000.00.  Such bid shall include a execution ready Asset Purchase Agreement which shall fully delineate all term of the offer ("APA").

   (ii) the maker of such bid must provide to counsel for the Debtor at least seven (7) business days prior to the Sale Hearing reasonably satisfactory evidence of financial capability and good faith intent to fulfill all of the terms

and conditions of any submitted APA on a timely basis, accompanied by payment of an initial deposit in available funds in the amount of the $100,000.00 which shall be refunded to any unsuccessful bidder, as soon as practicable after the conclusion of the Sale Hearing; and

   (iii) any dispute as to any bidder's intent or ability shall be resolved by the Court at the Sale Hearing;

c. At the Sale Hearing, the Court shall decide which of the bids is the highest and best bid.

d. Any initial counter bid for the Property must exceed the Purchase Price by $100,000.00, and all bid increments thereafter shall be at least $100,000.00.

e. Any offer that fails to meet any of the aforementioned factors shall not be deemed a higher and better offer.

f. No bidder is required to submit a bid in the same format as any other bidder. This is designed to encourage bidders to make the best offer possible without restricting such bidder to another bidder's format. However, if bids in other formats are submitted (i.e., bids for other assets other than the Property), than the Debtors and the Creditors Committee, for purposes of considering "Qualified Bids," shall compare what portion of the other bid relates to the Property as compared to the Purchase Price.

g. Property is being conveyed "as is."

h. As set forth in the Agreement, to the extent the Debtor ultimately contracts to sell the Property to a competing bidder, the Debtor recognizes the Buyer as a "stalking horse" and thus has agreed to a break-up fee in the amount of $500,000.00 payable to the Buyer at closing. This amount is 4.1% of the total estimated value of the Purchase

Price under the Agreement and was calculated based upon the expenses that the Buyer has incurred and is incurring in negotiating, documenting and consummating the transaction.

29. The offer made by the Buyer is deemed a Qualified Bid and nothing shall prevent the Buyer from making additional bids for the Property at the Sale Hearing.

### THE SALE APPROVAL ORDER

30. Finally, and most importantly, the Debtors seek the entry of an order pursuant to section 363 of the Bankruptcy Code, approving the Agreement and the sale of the Property in all respects, free and clear of any and all liens, claims, encumbrances and interests in or on the Property. The Sale Approval Order reflects the terms of the Agreement.

31. Pursuant to section 541 of the Bankruptcy Code, the Property to be sold to the Buyer under the Agreement (the "Sale"), are assets of the Debtors' bankruptcy estate.

32. In accordance with sections 363, 1107 and 1108 of the Bankruptcy Code, debtors-in-possession are authorized to sell property of the estate and maximize recoveries for their creditors.

33. Section 363(b) of the Bankruptcy Code authorizes a debtor or a trustee to sell its assets outside of the ordinary course of business. See 11 U.S.C. § 363(b)(1).

34. Section 363(f) of the Bankruptcy Code provides, in pertinent part, as follows:

> (f) [t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>   (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
>   (2) such entity consents;
>
>   (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
>   (4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

35. Generally, a debtor must show that each of the following elements have been met before a section 363(b) sale may be approved: (i) that a sound business reason exists for the proposed transaction; (ii) that the sale has been proposed in good faith; (iii) that the sale price is fair and reasonable; (iv) that accurate and reasonable notice has been provided of the transaction. See In re WDH Howell, LLC, 298 B.R. 527, 534 (D. N.J. 2003); In re Stroud Ford, Inc., 163 B.R. 730 (Bankr. M.D. Pa. 1993).

36. Courts have made it clear that a debtor a debtor's showing of a sound business justification need not be exhaustive, but rather a debtor or trustee is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin-United Com., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

37. Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. In re Lionel Com., 722 F.2d 1063, 1071 (2d Cir. 1983).

38. "The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings." In Re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 142, 147 (3d Cir. 1986). "Typically, the misconduct that would destroy s purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Id.

39. Here, the agreement was negotiated at arms length.

40. The Buyer is not controlled by, or acting on behalf of any insider of the Debtors.

41. Moreover, the Agreement is to be submitted subject to the receipt of higher and better offers. Thus, the proposed sale to Buyer constitutes a sale in good faith and for fair value within meaning of Section 363 of the Bankruptcy Code. See id.

42. The Debtors believe that the prompt sale of the Property, as proposed, is in the best interests of the creditors and the estate.

43. The Debtors believe that the Purchase Price is fair and reasonable under the circumstances.

44. Pursuant to the Sale, the Property shall be sold free and clear of all liens, claims, encumbrances and interests that may be asserted by any entity claiming an interest therein. Such liens, claims, encumbrances and interests shall be transferred and attach to the sale proceeds of the Property, subject to further orders of the Court and the rights, claims, defenses, and objections, if any, of any or all interested parties with respect thereto.

45. Break-up fees[1] have long been used in the context of corporate transactions, and are considered presumptively valid under the business judgment rule. See, e.g., Cottle v. Storer Communications, Inc., 849 F.2d 570, 578-79 (11th Cir. 1988); Samiens Partners I v. Burlington Indus., 663 F. Supp. 614, 625 (S.D.N.Y. 1987) (termination fee protected by business judgment rule). Recently, and with increasing frequency, bankruptcy courts have approved termination fees in a variety of transactions between investors and debtors in bankruptcy. See, e.g., In re Integrated Resources Inc., 135 B.R. 746, 753 (Bankr. S.D.N.Y.), affirmed, 147 B.R. 650,657 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir.1993) (approving termination fee of up to

---

[1] Break-up fees have also been called topping fees and termination fees. Although certain distinctions between them have been recognized, most courts use the three terms interchangeably.

$6 million, depending on state of transaction at time of termination); In re Crowthers McCall Pattern, Inc., 114 B.R. 877, 879 (Bankr S.D.N.Y. 1990) (termination fee approved); In re 995 Fifth Avenue Associates, L.P., 96 B.R. 24, 29 (Bankr. S.D.N.Y. 1989) (same).

46.  Factors that courts consider in allowing break-up fees also include: (1) whether the fee requested correlates with a maximization of value to the debtor's estate@; (2) lack of self-dealing, bad faith, fraud, or unfair dealing in the negotiations with the potential acquirer; (3) scrutiny by and support of the creditors; (4) whether the fee is a fair and reasonable percentage of the proposed purchase price; (5) whether the fee is so large as to chill competitive bidding; (6) the existence of available safeguards beneficial to the debtor's estate; and (7) whether the fee will have a substantial impact on unsecured creditors if such creditors are opposed to the break-up fee. In re Hun Industries, Inc., 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992); 955 Fifth Avenue Associates, L.P., 96 B.R. at 29. See also, Integrated Resources, 135 B.R. at 750-51.

47.  In the Debtor's business judgment, and in light of the above factors, approval of the Break-up Fee is appropriate here. The fee here is based on actual and projected expenses. The amount of the Break-up Fee -- approximately 4.1% or less of the total estimated value of the Purchase Price -- is reasonable in light of the cash consideration to be paid, the expenses incurred and to be incurred by Buyer, and in comparison to fees approved in other cases. See In re Integrated Resources, Inc., 147 B.R. 650, 662 (S.D.N.Y. 1992) and, In re Wang, Chapter 11 Case No. 92-18525 (Bankr. D. Mass. 1993). The Break-up Fee is sufficiently low so as not to chill competitive bids at the Sale Hearing while encouraging the Pending Buyer to complete the Sale. Finally, there is unlikely to be any adverse impact on unsecured creditors, because the Break-Up Fee is only payable from the deposit of another bidder, without any administrative liability to the Debtor's estate. The Debtors further aver that the approval of a breakup fee in

advance of the sale hearing is appropriate and that the Debtor can prove an actual and current benefit to the estate mandating the approval of such a breakup fee in accordance with In re O'Brien Environmental Energy, Inc., 181 F.3d 527 (3d Cir. 1999). Accordingly, the Debtors request that the Court enter the Bidding Procedures Order in the form submitted herewith.

## THE SALE COMPLIES WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(f)(1).

48. Federal Rule of Bankruptcy Procedure 6004(f)(1) provides that all sales not in the ordinary course of business may be by private sale or public auction. See Fed. R. Bankr. P. 6004(f)(1).

49. Notice of the proposed private sale pursuant to E.D.PA. L.B.R. 9014.3 should include the terms and conditions of any private sale and fix the time for filing objections. The Debtors submit that the Notice attached hereto and incorporated herein as Exhibit "E" meets the above requirements.

## APPROVAL OF THE AGREEMENT IS WARRANTED

50. The applicable principle of law with respect to the approval of asset sales in bankruptcy is stated in the case of In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983). The Court in Lionel held that approval of a sale is appropriate if the court finds the transaction represents a reasonable business judgment on the part of the debtor. See also, Stephens Industries v. McClung, 789 F.2d 3863 (6th Cir. 1986); In re Coastal Industries. Inc., 63 B.R. 361 (Bankr. N.D. Ohio 1986), In re Baldwin United Corp., 43 B.R. 888 (Bankr. S.D. Ohio 1984).

51. In light of the foregoing, the Debtors have determined that the Sale to Buyer on the terms and conditions set forth in the Agreement is appropriate and in the best interest of their estates and all parties in interest.

52. The Sale will enable the Debtors to fund a Plan that provides for a distribution to secured and unsecured creditors that likely would not be available absent the Sale.

**WHEREFORE,** the Debtors respectfully request that this Court (i) enter an Order approving the Bidding Procedures and the sale of the Property in a form substantially similar to the attached proposed form of Order, (ii) enter an Order approving the sale of the Real Estate free and clear of liens, claims, encumbrances and interest, (iii) assuming and assigning various contracts and (iv) grant such other and further relief as this Court deems just.

**CIARDI CIARDI & ASTIN**

Dated: May 25, 2011

By: _____
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
One Commerce Square, Suite 1930
2005 Market Street
Philadelphia, PA 19103
Proposed Attorneys for the Debtor and
Debtor-In-Possession

Case 11-14041-jkf    Doc 30    Filed 05/25/11    Entered 05/25/11 16:20:43    Desc Main
Document      Page 14 of 16

## THE SALE COMPLIES WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(f)(1).

1. Federal Rule of Bankruptcy Procedure 6004(f)(1) provides that all sales not in the ordinary course of business may be by private sale or public auction. See Fed. R. Bankr. P. 6004(f)(1).

2. Notice of the proposed private sale pursuant to E.D.PA. L.B.R. 9014.3 should include the terms and conditions of any private sale and fix the time for filing objections. The Debtors submit that the Notice attached hereto and incorporated herein as Exhibit "E" meets the above requirements.

## APPROVAL OF THE AGREEMENT IS WARRANTED

3. The applicable principle of law with respect to the approval of asset sales in bankruptcy is stated in the case of In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983). The Court in Lionel held that approval of a sale is appropriate if the court finds the transaction represents a reasonable business judgment on the part of the debtor. See also, Stephens Industries v. McClung, 789 F.2d 3863 (6th Cir. 1986); In re Coastal Industries. Inc., 63 B.R. 361 (Bankr. N.D. Ohio 1986), In re Baldwin United Corp., 43 B.R. 888 (Bankr. S.D. Ohio 1984).

4. In light of the foregoing, the Debtors have determined that the Sale to Buyer on the terms and conditions set forth in the Agreement is appropriate and in the best interest of their estates and all parties in interest.

5. The Sale will enable the Debtors to fund a Plan that provides for a distribution to secured and unsecured creditors that likely would not be available absent the Sale.

1

**WHEREFORE,** the Debtors respectfully request that this Court (i) enter an Order approving the Bidding Procedures and the sale of the Property in a form substantially similar to the attached proposed form of Order, (ii) enter an Order approving the sale of the Real Estate free and clear of liens, claims, encumbrances and interest, (iii) assuming and assigning various contracts and (iv) grant such other and further relief as this Court deems just.

**CIARDI CIARDI & ASTIN**

Dated: May 25, 2011    By: /s/ Albert A. Ciardi, III
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
One Commerce Square, Suite 1930
2005 Market Street
Philadelphia, PA 19103
Proposed Attorneys for the Debtor and
Debtor-In-Possession

2