UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>FRAZER/EXTON DEVELOPMENT,<br>L.P., et al.,<br><br>Debtors. | CHAPTER 11<br><br>Case No. 11-14041 (JKF)<br>(Jointly Administered) |

### DEBTORS' SUPPLEMENTAL MEMORANDUM CONCERNING MECHANICS OF APPLICATION OF EQUITABLE TOLLING

Frazer/Exton Development, L.P., and Whiteland Village, Ltd. (collectively, the "Debtors") submit this supplemental memorandum to address the mechanical aspects of equitable tolling. The Court has expressed the preliminary view that the doctrine of equitable tolling would be unavailable in connection with a yet to be filed Rule 60 motion because the Debtors had sufficient knowledge of Sovereign's discovery misconduct three months prior to the expiration of the one year anniversary of the order that the Debtors may seek to vacate, and thereafter failed to exercise reasonable diligence to file the motion before the one year deadline.[1] By focusing on the Debtors' conduct in the three months after they had allegedly discovered the basis for their discovery misconduct claim, the Court misapplied the doctrine of equitable tolling and contravened controlling Third Circuit precedent.

In short, the reasonable diligence element that must be satisfied before one may invoke the benefit of equitable tolling focuses solely on a victim's conduct before the discovery of the facts giving rise to her claim, not to her conduct after she has discovered or in the exercise of reasonable

---

[1] As further discussed *infra*, Debtors vigorously contest any conclusion that they failed to exercise reasonable diligence in investigating and attempting to rectify Sovereign's discovery misconduct.

1

diligence should have discovered the claim. Moreover, in *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1389 (3d Cir. 1994), the seminal Third Circuit decision regarding the application of equitable tolling, the Court held unequivocally that, where a party has been actively misled as to the facts supporting a claim, "the equitable tolling doctrine provides [that party] with the full statutory limitations period, starting from the date the facts supporting the [party's] cause of action either become apparent to the [party] or should have become apparent to a person in the [party's] position with a reasonably prudent regard for his or her rights."

As the *Oshiver* Court explained, the rationale behind the rule is rooted in notions of justice and fair play, the goal being to ensure that a wrongdoer does not benefit from his misdeeds:

> [T]he equitable tolling doctrine tolls the initial running of the statutory period until the plaintiff knows, or should reasonably be expected to know, the concealed facts supporting the cause of action . . . . Unless the plaintiff is then given the *full* statutory period in which to file his or her [claim for relief], **starting from the moment he or she acquires or constructively acquires such knowledge**, the defendant's inequitable conduct will have served to shorten the limitations period, and thus benefit the defendant. This is precisely the result the equitable tolling doctrine was created to avoid.

*Id.* at 1392 (italics in original; boldface emphasis added).

The *Oshiver* approach is the only logical approach to equitable tolling in that it promotes certainty as to the date on which a tolled limitations period expires. Any suggestion that equitable tolling applies only when one discovers the claim after the expiration of the limitations period makes no sense and would lead to absurd results, as the following example demonstrates. Under *Oshiver*, a party who had been misled but then discovered her claim one month after the limitations period had expired would be entitled to a full year to file her claim, yet – under the

2

Court's initial interpretation of the applicable principles – a party who had been misled but who discovered her claim one month before the expiration of the limitations period would obtain no tolling, and would have only a month to file her claim. While we have found no Third Circuit opinion specifically discussing the application of equitable tolling where a party has discovered her claim before the expiration of the limitations period, it cannot be the case that a misled party who discovers her claim a month after receives the benefit of the full limitations period, while a misled party who discovers her claim a month before gets no tolling whatsoever, and has only one month to file her claim. Such a result would be seemingly absurd, in direct conflict with the principles and mandate of *Oshiver*, and contrary to the plain meaning of the word "toll," which is defined with regard to a time period as meaning "to stop the running of; to abate." *Black's Law Dictionary* (9th ed. 2009).

The Debtors' interpretation of the mechanics of equitable tolling is consistent with *Oshiver*, long-standing Supreme Court precedent, and caselaw from across the nation:

> Time requirements in law-suits are customarily subject to 'equitable tolling.' Thus, this Court has said that in the usual case, "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, **the bar of the statute does not begin to run until the fraud is discovered**, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party."

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991) (editorial marks and citations omitted, emphasis added) (quoting *Bailey v. Glover*, 88 U.S. 342, 347 (1874)); *accord Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946). As succinctly stated by the Eleventh Circuit, "[t]olling means just what it says – the clock is stopped while tolling is in effect." *Knight v. Schofield*, 292 F.3d 709, 712 (11th Cir. 2002); *see also Cabello v.*

*Fernandez-Larios*, 402 F.3d 1148, 1156 (11th Cir. 2005) ("When a statute is equitably tolled, the statutory period does not begin to run until the impediment to filing a cause of action is removed[, i.e,] . . . when the information [underlying the claim] bec[omes] available.").

Indeed, the Ninth Circuit has noted that any contrary approach to equitable tolling "trumps what is arguably Congress' intended policy objectives in setting forth a statutory limitations period – to permit plaintiffs to take a specified amount of time (even if they don't 'need it') to further investigate their claim and consider their options before deciding whether to file suit." *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193-96 (9th Cir. 2001) (*en banc*) (citations omitted).

To the extent that Sovereign claims that out-of-context snippets from other Third Circuit cases – such as *Cetel v. Kirwan Financial Group*, 460 F.3d 494 (3d Cir. 2006), or *Ruehl v. Viacom, Inc.*, 500 F.3d 275 (3d Cir. 2007) – support the argument that *Oshiver*'s mandate does not apply here, Sovereign is patently incorrect. *Oshiver* directly "address[ed] the important question concerning the amount of time a plaintiff is afforded in which to file an otherwise untimely charge or complaint when equitable tolling is activated," unequivocally holding that the beneficiary of equitable tolling is entitled to the "*full* statutory period in which to file his or her [claim for relief]." *Oshiver*, 28 F.3d at 1388, 1392 (emphasis in original). Neither *Ruehl* (which cites *Oshiver* approvingly and extensively), *Cetel*,[2] nor any other Third Circuit or Supreme Court

---

[2] *Cetel* cites *Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239, 256 (3d Cir. 2001), which directly contradicts Sovereign's argument concerning the application of equitable tolling by stating that, to survive summary judgment on the issue of equitable tolling, the party seeking tolling must demonstrate that they "were not aware, nor should they have been aware, of the facts supporting their claim until a time within the limitations period measured backwards from when the plaintiffs filed their complaint." Here, the earliest conceivable time that Debtors could have been aware of the facts supporting their claim is August 2012, well within the

4

case has overruled the holding in *Oshiver*, which remains binding on this Court as to the issue at hand.

To the extent the cases cited by Sovereign imply otherwise, the cited language is plainly dicta and the cases are distinguishable. In *Cetel*, the plaintiffs had actual knowledge of the facts giving rise to their claim in August 1995, yet failed to file until July 2000, nearly one year after the four year statute of limitations would have run even had equitable tolling been applied. In dicta, the Court observed that equitable tolling was unavailable because the plaintiff did not exercise due diligence after receiving information that might have suggested the existence of a claim. 460 F.3d at 509 ("plaintiffs did not exercise the due diligence expected of a reasonable investor because they failed to undertake any investigation into the meaning of the storm warnings beyond asking defendants whether their plans were legitimate"). In *Ruehl*, an employee suspected illegal discrimination was the cause of his firing in 1998, yet failed to pursue his claim until 2003, over five years after the applicable filing deadline. 500 F.3d at 383-85. Neither *Cetel* nor *Ruehl* addressed the *Oshiver* issue, i.e., the amount of time a plaintiff is afforded in which to file an otherwise untimely charge or complaint when equitable tolling is activated. Thus, neither *Cetel* nor *Ruehl* can be held to trump *Oshiver*'s mandate that a party benefitting from equitable tolling is entitled to the "*full* statutory period in which to file his or her [claim for relief]." 38 F.3d at 1392 (emphasis in original).

---

limitations period (one year) measured backwards from Debtors' January 22, 2013, filing of their motion to reopen. Under *Mathews*, if the Court is correct that the Debtors were on sufficient notice of Sovereign's discovery misconduct in August 2012, the doctrine of equitable tolling affords the Debtors until August 2013 (i.e., a period of one year) to file a motion for relief under Rule 60.

Courts in the Third Circuit routinely provide parties with the benefit of the full statutory period in which to bring claims when equitable tolling is justified. In, for example, *In re Liberty Brands, LLC*, 476 B.R. 443, 450 (Bankr. D. Del. 2012), the Court applied equitable tolling to allow an otherwise barred action to avoid a postpetition transaction because the facts underlying the claim were not revealed until the defendant filed its answer to interrogatories in related litigation. There, the Court held that equitable tolling was justified despite the fact that the avoidance claim was filed on January 24, 2011, nearly nine months after the revelatory April 30, 2010, interrogatory response. *Id.*

Simply stated, in light of the considerable effort they expended in diligent pursuit of their rights, the Debtors should not be foreclosed from seeking to equitably toll any Rule 60 deadline. *Cf. Ragan v. Horn*, 411 F. App'x 491, 495 (3d Cir. 2011) (allowing equitable tolling where "[an untimely-filing habeas petitioner] and his attorneys did not simply sit on their rights. Rather, they were actively involved in seeking . . . the documents they believed were necessary to pursue [the petitioner's] claims adequately. . . . [W]e expect only reasonable diligence for equitable tolling once extraordinary circumstances have been found."); *see also Holland v. Florida*, 130 S. Ct. 2549, 2565 (2010) ("The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" (citations and quotation marks omitted)).

Debtors demonstrated exceptional diligence in investigating their suspicions regarding Sovereign's discovery misconduct, and in attempting to rectify that misconduct once their investigation revealed evidence that it had in fact occurred. It was not until the Debtors hired new counsel who had been involved in the bankruptcy case of *In re 400 Walnut Associates, L.P.*, 475 B.R. 217 (Bankr. E.D. Pa. 2012), that they were alerted to Sovereign's practice of

institutional discovery misconduct in other cases. New counsel reviewed the documents produced by Sovereign in the instant matter and was immediately suspicious that relevant documents had been withheld. The Debtors acted diligently on that information, filing a motion in state court to extend certain deadlines in the pending Chester County foreclosure and guaranty actions so that they could investigate whether Sovereign had wrongfully withheld discoverable documents, and, if so, the extent of the misdeeds. As noted at length by this Court, this was the appropriate course of action at the time:

> [W]hy is this action [in Bankruptcy Court] not premature? . . . . We've already determined that we didn't have an emergency to begin with, because you didn't have a problem in the State Court. . . . You don't need anything from me to file [a] lawsuit [against Sovereign and Nordbank]. . . . [T]hat's what you want all this discovery for is so that you can turn around and bring a suit to undo the settlement agreement . . . . [Y]our timing issue . . . has to do with getting the discovery, period, end of discussion, full stop. [B]ut you don't need me for that. . . . I'm just not sure why we're here today.

*See* 2/19/13 Transcript at p. 21-22.

It was only after Sovereign provided additional information in state court – and litigation counsel had time to analyze the information and retain bankruptcy counsel – that it became apparent that the instant motion to reopen was necessary. Indeed, at the first hearing in connection with the motion, the Court suggested that the filing may have been premature, questioning whether the Debtors had sufficient evidence of Sovereign's alleged misconduct:

> I think you're going to have a very hard time getting me to believe that I should reopen this bankruptcy case because you have nothing that suggests to me that this bankruptcy case should be reopened. . . . [I]f I had to rule on this today without any [additional] evidence, I would rule against you on the motion to reopen. So let me just make that very clear.

*See* 1/29/13 Transcript at 32-33. It was not until February 2013 – during the very limited discovery conducted in association with the motion to reopen – that Debtors' suspicions were fully confirmed,

7

with Sovereign admitting that it, without alerting Debtors or this Court that they were doing so, improperly withheld information from two of three possible sources of electronic discovery, i.e., backup tapes and a shared computer drive.[3]

Under the circumstances here, an order denying the Debtors' motion to reopen based on the alleged untimeliness of claims yet to be asserted would contravene *Oshiver* and the very principles underlying the doctrine of equitable tolling, while serving only to reward Sovereign for its flagrant discovery abuse, an unjust result that this Court should not endorse.

Respectfully submitted,

| | |
|---|---|
| HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER | KAUFMAN, COREN & RESS, P.C. |
| By: Ashely M. Chan | By: Steven M. Coren |
| Joseph A. Dworetzky | Steven M. Coren |
| Ashely M. Chan | Benjamin M. Mather |
| Matthew A. Hamermesh | Andrew J. Belli |
| One Logan Square, 27th Floor | Two Commerce Square, Suite 3900 |
| Philadelphia, PA 19103 | 2001 Market Street |
| (215) 568-6200 | Philadelphia, PA 19103 |
| *Bankruptcy Counsel for the Debtors* | *Special Counsel for the Debtors* |

Dated: June 7, 2013

G:\Docs\Whiteland Village\Bankruptcy Case\Equitable Tolling Application Brief.smc revised.wpd

---

[3] It bears noting that the full extent of Sovereign's discovery misconduct has yet to be revealed. During the Motion to Reopen discovery before this Court, Sovereign admitted that it used "different parameters" for the Chester County discovery, with "higher scrutiny" than it exercised before this Court, *see* Jt. Ex. 6 at pp.2-3, and Debtors have not been afforded the opportunity to ascertain the exact meaning and importance of such differences.